# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**TARA LYNN ZIEGLER,**

      **Plaintiff,**

v.                                                     Case No:  6:16-cv-1618-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Tara Lynn Ziegler (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits. Doc. 1. Claimant raises a number of arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. Doc. 19 at 23-26, 28-31, 33-39, 43-49. The Commissioner argues that her final decision is supported by substantial evidence and should be affirmed. *Id*. at 26-28, 32-33, 39-43, 45-46, 48-49. The Court finds that the Commissioner's final decision is due to be **AFFIRMED** for the reasons discussed below.

**I.**      **<u>PROCEDURAL HISTORY</u>.**

This case stems from Claimant's application for supplemental security income, in which she alleged a disability onset date of September 20, 2012. R. 33, 180-88, 196. Claimant's application was denied on initial review, and on reconsideration. The matter then proceeded before an ALJ. The ALJ held a hearing on December 2, 2014, at which Claimant and her representative appeared. R. 53-85. The ALJ entered her decision on February 11, 2015, and the Appeals Council denied review on July 20, 2016. R. 1-3, 33-44. This appeal followed.

## II. THE ALJ'S DECISION.

The ALJ found that Claimant suffered from the following severe impairments: seizure disorder, history of asthma, left shoulder joint disorder, sciatica, affective disorder, anxiety disorder, personality disorder, and polysubstance abuse. R. 35. The ALJ, however, determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment. R. 35-36.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b),[1] with the following specific limitations:

> [N]o climbing of ropes, ladders, or scaffolding; no exposure to hazards; and no exposure to the general public. The claimant is limited to simple routine tasks with no more than occasional collaborative efforts with coworkers and supervisors in a job with no goal setting judgments (a production schedule would be provided). The claimant can have no exposure to concentrated temperature extremes, or concentrated fumes, gases, or poorly ventilated areas. The claimant is precluded from overhead reaching with the non-dominant left arm.

R. 36-37. The Claimant does not have any past relevant work. Thus, the ALJ proceeded onto step five of the sequential evaluation process and found, based on the vocational expert's (VE) testimony and Dictionary of Occupational Titles, that Claimant could perform other work in the national economy. R. 43-44. Thus, the ALJ concluded that Claimant was not disabled since the date of her application for disability benefits. R. 44.

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

## III. STANDARD OF REVIEW.

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. ANALYSIS.

Claimant raises five distinct assignments of error: 1) the ALJ failed to fully develop the record; 2) the ALJ did not give proper weight to the examining psychiatrist's opinion; 3) the ALJ erred by finding that Claimant's testimony concerning her pain and limitations not entirely credible; 4) the ALJ erred by finding that Claimant's mental impairments only limited her to performing simple, routine tasks in a socially limited environment; and 5) the ALJ erred by relying on the vocational expert's (VE) testimony in determining that Claimant can perform other work in the national economy. Doc. 19 at 23-26, 28-31, 33-39, 43-48. The Court will address each argument in turn.

### A. Duty to Develop.

The record demonstrates that Claimant suffers from and has received treatment for a history of seizures and a variety of mental impairments. Claimant suggests that "[i]t is possible that the seizure disorder has an [e]ffect on the mental health disorders and/or the mental health disorders have affected the seizure disorder or made it more difficult for [her] to properly manage the seizure disorder." Doc. 19 at 25. Thus, Claimant argues that the ALJ "should have obtained the services of a medical expert and/or psychological expert to evaluate the effect of [her] . . . brain dysfunction on [her ability] . . . to function in light of the seizures, the number of seizures that [she] would potentially suffer from, [and] the interrelationship of [her] mental health disorders and [her] seizure disorder[.]" *Id*. at 26.

The Commissioner argues that the record contains sufficient evidence to allow the ALJ to make an informed decision, and that Claimant failed to demonstrate how she was prejudiced by the ALJ's failure to obtain a consultative examination. *Id*. at 27-28. Thus, the Commissioner argues that the ALJ was under no duty to order a consultative examination. *Id*. at 28.

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[2] This duty generally requires the ALJ to assist in gathering medical evidence, and to order a consultative examination when such an evaluation is necessary to make an informed decision. 20 C.F.R. § 416.912(b). There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which resulted in unfairness or clear

---

[2] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Claimant was represented during the administrative proceedings. *See* R. 53-85. Therefore, the ALJ, in this case, only had a basic duty to develop the record.

prejudice, before the court will remand a case for further development of the record. *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35).

The record contains approximately 1,500 pages of medical records dating from 2006 through 2015, many of which relate to Claimant's seizures and mental impairments. R. 310-1845. The record also contains a number of medical opinions from examining and non-examining medical sources, including opinions from non-examining medical and psychological consultants and an examining psychiatrist that were rendered following the alleged onset date. R. 92-95, 106-111, 1421-25. Claimant implicitly argues that this evidence was not enough to allow the ALJ to make an informed decision, because there was nothing addressing the possible interaction between her seizures and mental impairments and the limitations that may be caused by those impairments. *See* Doc. 19 at 25-26. This argument is speculative, as it does not identify any particular evidentiary gaps in the record. The record contains a wealth of evidence concerning Claimant's impairments, including her seizure and mental impairments, as well as medical opinions from examining and non-examining physicians, which the ALJ carefully considered in her decision (R. 38-43). This evidence addressed the nature, frequency, and effects of Claimant's seizure and mental impairments, as well as Claimant's other impairments, and, thus, was sufficient to allow the ALJ to make an informed decision about the effects of all of Claimant's impairments. Thus, the Court finds that the ALJ was not required to order an additional examination. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The [ALJ] . . . is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").

Further, assuming the ALJ should have ordered an examination, Claimant has not demonstrated how she was prejudiced by the ALJ's failure to obtain that examination. The record,

as previously discussed, contained ample evidence for the ALJ to make an informed decision, including medical opinions from examining and non-examining medical sources. R. 310-1845. Claimant suggests that the examination would have provided information not otherwise contained in the record, including insight into the functional limitations caused by her seizures, the number of seizures that she experiences in a given period, and the interrelationship of her seizures and mental impairments. Doc. 19 at 26. The record, however, contains, in one form or another, much of the information that would likely be considered and discussed in the examination report. The record, for example, details Claimant's reports of seizures, and, thus, allowed the ALJ to consider the frequency, severity, and treatment of Claimant's seizures, and account for that impairment in her RFC determination. Thus, it is does not appear that an additional examination would alter the outcome of this case. Therefore, the Court finds that Claimant has failed to demonstrate what, if any, prejudiced resulted due to the ALJ's failure to obtain an additional consultative examination concerning her seizure and mental impairments.

**B. Medical Opinion.**

Claimant argues that the ALJ gave "improper weight" to one-time examining psychiatrist, Dr. Harish Kher, and, thus, suggests that the ALJ should have given Dr. Kher's opinion significant weight and included his findings and opinions in the RFC determination. Doc. 19 at 44-45. The Commissioner argues that while the ALJ did not articulate the weight she assigned Dr. Kher's opinion, the ALJ nevertheless considered Dr. Kher's findings and opinion, which were relatively consistent with the ALJ's RFC determination. *Id*. at 46. Thus, the Commissioner argues that to the extent the ALJ committed any error with respect to Dr. Kher's opinion, that error is harmless. *Id*.

The consideration and weighing of medical opinions is an integral part in determining the claimant's RFC. The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 416.927(c). The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id.*

Dr. Kher performed a one-time psychiatric evaluation of Claimant in September 2014. R. 1421. Dr. Kher noted the following: Claimant's speech was coherent and appropriate; Claimant's affect was blunted with underlying anger; Claimant's thought processes were seemingly normal; Claimant was alert and oriented to time, place, person and situation; Claimant's memory was relatively normal; Claimant's attention and concentration were "impaired;" Claimant's intellectual functioning and fund of knowledge was "low average;" and Claimant's judgment and insight were poor. R. 1424. Dr. Kher diagnosed Claimant with various mental impairments including post-traumatic stress disorder, polysubstance abuse, and mixed personality disorder with features of borderline personality disorder, and assessed Claimant with a Global Assessment of Functioning (GAF) score of 60.[3] R. 1424-25. Dr. Kher found Claimant had a major issue with substance abuse,

---

[3] GAF scores are used to report an individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision, 2000). A GAF score of 51-60 reflects: "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning

and that her prognosis was poor. R. 1425. Dr. Kher recommended that Claimant obtain regular psychiatric and psychotherapy counseling, as well as anger management. *Id*.

The ALJ considered Dr. Kher's examination and his opinions. R. 40-41. The ALJ did not assign any specific weight to Dr. Kher's opinion, but did find that it was entitled to greater weight than the non-examining psychological consultants' opinions. R. 42-43.

The ALJ erred by not assigning Dr. Kher's opinion specific weight. This error, however, was harmless. The record reveals that the ALJ considered Dr. Kher's examination and opinions, and gave them more weight – though it is not clear how much more weight – than the non-examining psychological consultants' opinions. R. 41-43; *see Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). It appears Claimant argues that the ALJ should have assigned significant weight to Dr. Kher's opinion, and, as a result, included or accounted for Dr. Kher's observations – such as Claimant's impaired attention and concentration, poor impulse control, and poor judgment – and his opinions in the RFC determination. Doc. 19 at 44-45. The ALJ, however, does not appear to have rejected Dr. Kher's opinion, as Claimant's argument suggests, but, instead, found it consistent with the evidence of record. *See* R. 42-43. Indeed, the ALJ's RFC determination appears to be consistent with Dr. Kher's examination and opinions. *See* Doc. 19 at 44-45. The ALJ, for example, limited Claimant to performing simple, routine work that did not have any production demands. R. 36-37. These limitations appear to be consistent with Dr. Kher's observation that Claimant had "impaired" attention and concentration. *Compare* R. 36-37 *with* R. 1424. Thus, the Court finds that the ALJ's failure to assign Dr. Kher's opinion specific weight was harmless error, because the ALJ considered Dr. Kher's opinion and the ALJ's RFC

---

(e.g., few friends, conflicts with peers or co-workers)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision, 2000) (emphasis in original).

determination appears to be consistent with or is otherwise not clearly inconsistent with Dr. Kher's opinion. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008).[4]

### C. Mental Limitations.

Claimant argues that the ALJ's determination that Claimant should not have any exposure to the general public and "is limited to simple routine tasks with no more than occasional collaborative efforts with coworkers and supervisors in a job with no goal setting judgments" is not supported by substantial evidence. Doc. 19 at 47-48. The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence. *Id*. at 48.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe, when determining the claimant's RFC. 20 C.F.R. § 416.945(a)(2).

The record reveals that the ALJ considered Claimant's mental impairments, and the effect those impairments would have on her ability to function. R. 40-42. Claimant does not specifically challenge the limitations the ALJ included in her RFC determination. Instead, Claimant points to various pieces of evidence – such as her inability to care for her children (all of whom have been placed in the care of someone else), inability to maintain steady housing, and unstable relationships

---

[4] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

– and argues that such evidence "does not support [her] ability to maintain the adequate concentration, and social skills necessary to perform even an unskilled position involving simple routine tasks." Doc. 19 at 47-48. The evidence Claimant points to does not undermine the mental limitations included in the ALJ's RFC determination. The ALJ considered the medical, opinion, and testimonial evidence concerning Claimant's mental impairments, and found that the limitations set forth in her RFC determination properly account for Claimant's mental limitations. These limitations are supported by substantial evidence, which the ALJ discussed in her decision, including, but not limited to, Claimant's intermittent treatment for mental health issues, Dr. Kher's opinion, and Claimant's testimony concerning the effectiveness of psychotropic medications when she takes those medications as prescribed. R. 40-41. The possibility that the evidence Claimant cites to may support more severe limitations – and the Court is not suggesting that it does – does not undermine the ALJ's RFC determination, because the mental limitations included in the ALJ's RFC determination are supported by substantial evidence. *See Bloodsworth*, 703 F.2d at 1239 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.").

**D. Credibility.**

Claimant argues that the ALJ failed to fully consider the evidence in the record, which, Claimant argues, supports her testimony concerning the intensity, persistence and limiting effects of her impairments. Doc. 19 at 33-39. The Commissioner argues that the ALJ articulated specific reasons in support of her credibility determination, and that those reasons and the ALJ's ultimate determination that Claimant's testimony concerning the intensity, persistence and limiting effects of her impairments was not entirely credible is supported by substantial evidence. *Id*. at 39-43.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through the claimant's own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at § 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

> The ALJ summarized Claimant's testimony as follows:
>
> At the hearing, the claimant testified that she was unable to work because of unpredictable seizures, headaches, shoulder and low back pain, asthma, and her mental impairments including manic depression and posttraumatic stress disorder. The claimant testified that she took prescribed medication for seizures and was followed by a neurologist. She related having a vagus nerve stimulator (VNS) implant and indicated that she experienced associated pain and discomfort in her arm and in her neck with movements. She stated that stress, balance issues, and heat can trigger seizures. Despite treatment, she reported having ongoing seizure events, and indicated that she experienced multiple seizures on the way to the hearing. She stated that she did not remember things after having a seizure, and described bad headaches and the need for sleep as postictal symptoms.

> The claimant related a history of bodily injuries during seizures including dislocating her shoulder and loosing teeth. She reported that she had no cartilage in her shoulder and needed surgery for this. She stated that she could not lift anything with her left hand. She rated her shoulder pain as an eight on a scale of one to ten with ten being the most severe, and stated that she took Extra Strength Tylenol for pain relief. The claimant testified that she suffered from sciatica that resulted from being hit by cars while a pedestrian, and indicated that bending hurt her back.
>
> The claimant testified that she had a history of asthma with some breathing problems, and that migraine pain made concentration difficult.
>
> The claimant testified to mental health diagnoses including manic depression (bipolar) and posttraumatic stress disorder (PTSD). She stated that she experienced mood swings, panic attacks, and anxiety attacks. She said that Zoloft helped keep her "balanced" but related that she did not take the medication while pregnant, having recently found out that she is pregnant again. While the claimant admitted a history of illicit drug use, she stated that she stopped using drugs by January 2014, possibl[y] earlier. She indicated that positive urine drug testing performed after that time were not accurate and her record clearly shows that she was dismissive of "trace" amounts of cocaine being found in her previous newborn's blood system. The claimant stated that she tried to Baker Act herself because she was out of medications to treat her seizure disorder and mental symptoms, but indicated that a police officer slammed her around and said that she was combative which appears to be a theme in her life as chronicled in police records and medical files.
>
> The claimant testified that she is 15 weeks pregnant and lives with her boyfriend, who receives disability payments because of a back condition. She indicated that she did not have custody of her other children, but wanted to get an apartment and keep this baby. She said that she wanted to attend college to study forensics and would be going to college if she had the money. She reported that she had applied for jobs at several places, but was told she was too much of a risk because of her medical conditions. She related daily activities including going to the homeless coalition, getting her mail, going to the library to use the computer, and going to McDonalds with her boyfriend. She stated that she visited with her daughter, who is living with her aunt, three times a week at McDonalds or the library.

R. 37-38.[5] The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

---

[5] There is no argument challenging the accuracy of this summary.

entirely credible[.]" R. 38. The ALJ provided further explanation in support of her credibility determination, explaining:

> The claimant has received various forms of medical care for her allegedly disabling symptoms, and that treatment has been generally successful in controlling the claimant's symptoms when she is compliant with prescribed treatment recommendations. The claimant admitted that her mental health symptoms were well controlled when she was on medication, but the record documents extended periods of absent psychotropic medication use. The claimant's seizures are treated with oral medications and a VNS implant. Yet, she apparently went an extended period without the activating magnet of her VNS, and her use of prescribed anti-seizure medication was only intermittent and undermined by illicit drug use. The claimant's asthma was noted to be stable with minimal treatment.
>
> The claimant's subjective reports of headache and musculoskeletal pain were treated conservatively with oral and topical analgesic medications. The record does not reflect that any physician felt the claimant's degree of pain would warrant more aggressive treatment such as the consistent use of narcotic pain medications, physical therapy, referral to a pain management specialist, or hospitalization.
>
> The claimant has described daily activities that are not limited to the extent expected, given the complaints of disabling symptoms and limitations. The claimant remains capable of living independently, adequately tending to her personal care needs, performing routine chores, utilizing public transportation, shopping, going to the beach, maintaining relationships and socializing with others, attending medical appointments, using a computer, reading, and watching television. She reported that money was the only thing keeping her from attending college to study forensics. The claimant testified that she wanted to get an apartment and rear her next baby with her current boyfriend, which is noted to be quite demanding both physically and emotionally.
>
> The claimant testified that she had applied for jobs but was turned down reportedly because she was a high risk due to her medical conditions. The claimant's actions of seeking work opportunities suggests that she is capable of employment. The undersigned finds that the claimant's application for work opportunities is inconsistent with the allegations of ongoing disability due to her medical impairments.
>
> Overall, the claimant's functional abilities indicate a good tolerance for some level of work activity, and limitations related to the claimant's severe impairments have been allowed for in the residual functional capacity described above. Despite claiming a complete inability to work, the record provides no convincing evidence over time, and the undersigned cannot find the testimony and alleged limitations of the claimant to be well supported by the evidence of record.

> When evaluating the credibility of the claimant, the undersigned considered the inconsistent information provided by the claimant within the record of evidence. The claimant has provided inconsistent information regarding her use of illicit drugs. At the hearing, the claimant testified that she had last used illicit drugs at either the end of 2013 or beginning of 2014. Yet, a urine drug screen performed November 13, 2014, only a few weeks prior to the hearing, was positive for cocaine (Exhibit 27F/4), as was a June 28, 2014 urine drug test (Exhibit 26F/13). When hospitalized from June 11, 2014 to June 13, 2014, the claimant stated that she had not used crack in six months, but a June 1, 2014 urine drug test was positive for cocaine (Exhibit 26F/32-38). The claimant's baby, born February 19, 2014, tested positive for cocaine (Exhibit 24F). In August 2013, the claimant reported that she had not used cocaine or meth since 2011 (Exhibit 20F/9) yet, in February 2012, she admitted that she had used cocaine the previous month (Exhibit 12F/126). Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.

R. 41-42. Thus, the ALJ articulated several reasons in support of her credibility determination, almost all of which Claimant challenges on appeal.

First, the ALJ found that Claimant's testimony was not entirely credible, in part, due to the intermittent nature of Claimant's treatment, and the improvement Claimant experienced when she was compliant with her prescribed treatment. R. 41. An ALJ may consider the nature, scope, and success of a claimant's treatment when assessing the credibility of claimant's testimony. 20 C.F.R. § 416.929(c)(3)(iv)-(v). Claimant argues that this finding does not account for the following evidence: that she was often unable to afford her medications; that she stopped taking some medications, such as Zoloft, because of her pregnancies; and, that she continued to have seizures even when she was taking her medications as prescribed. Doc. 19 at 37-38. The ALJ considered much of the evidence Claimant cites to, and, nevertheless, found that the nature and scope of Claimant's treatment did not fully support her testimony concerning the severity of her impairments and resulting limitations. The ALJ, for example, relied on evidence concerning the effectiveness of Claimant's psychotropic medication when she was taking the medication as prescribed, the extended period of time Claimant went without the activating magnet for her VNS

implant,[6] and the impact of Claimant's substance abuse on the efficacy of her seizure medication. R. 41. This evidence tends to support the ALJ's credibility determination.

The only evidence the ALJ seemingly overlooked was Claimant's ability to afford treatment, namely her seizure medication. The ALJ should have explored Claimant's ability to afford her medication in her decision, but, since the ALJ does not appear to have relied primarily on Claimant's intermittent treatment in considering her credibility, the ALJ's consideration of that evidence does not require reversal. *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917 (11th Cir. 2015) ("Where the ALJ did not rely significantly on the claimant's noncompliance, however, the ALJ's failure to consider evidence regarding the claimant's ability to afford her prescribed treatment does not constitute reversible error.") (citing *Ellison v. Barnhart*, 355 F,3d 1272, 1275 (11th Cir. 2003)). The ALJ, instead, articulates a host of reasons in support of her credibility determination, R. 41-42, all of which, as discussed below, support her credibility determination. Therefore, the Court finds that the ALJ's first reason is supported by substantial evidence, and generally supports her credibility determination.

Second, the ALJ found that Claimant's testimony was not entirely credible, in part, due to the conservative nature of Claimant's treatment. R. 41. An ALJ may consider the type of treatment a claimant receives when assessing the credibility of claimant's testimony. 20 C.F.R. § 416.929(c)(3)(v); *Horowitz c. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863-64 (11th Cir. 2017). Claimant concedes that her treatment has been conservative, but, nevertheless, argues that this fact does not undermine her credibility because there is no evidence that more aggressive treatment

---

[6] "A VNS device is a pacemaker-like device designed to prevent seizures by sending regular impulses of electrical energy to the brain via the vagus nerve. Holding a special magnet near the implanted device triggers it to deliver another burst of stimulation, outside of programmed intervals. This emergency intervention can be used to stop an ongoing seizure." *United States v. N. Ill. Special Rec. Ass'n*, 168 F. Supp. 3d 1082, 1089 (N.D. Ill. 2016).

was necessary or would be helpful.  Doc. 19 at 38-39.  The Court is not persuaded.  The ALJ properly considered the type of treatment Claimant received, which was, as Claimant concedes, conservative given the nature of Claimant's impairments.  The absence of evidence suggesting that more aggressive treatment was not necessary or would not be helpful does not necessarily undermine the significance of Claimant's conservative treatment, since it is reasonable to conclude, based on Claimant's testimony concerning the effects of her impairments, that she would have sought out or been prescribed more aggressive treatment.  Therefore, the Court finds that the ALJ's second reason is supported by substantial evidence, and supports her credibility determination.

Third, the ALJ found that Claimant's testimony was not entirely credible, in part, due to the nature and scope of Claimant's daily activities, and her interest in attending college and keeping her unborn child.  R. 41.  An ALJ may consider a claimant's activities of daily living when assessing the credibility of claimant's testimony.  20 C.F.R. § 416.929(c)(3)(i).  Claimant argues that neither her daily activities nor her interest in attending college and keeping her unborn child undermine her testimony concerning the severity or effects of her impairments.  Doc. 19 at 37-38. The Court is not persuaded.  The ALJ reasonably concluded that Claimant's activities of daily living were inconsistent with her testimony concerning the severity and effects of her impairments. The ALJ also reasonably concluded that Claimant's intent to attend college (more so than her intent to keep her unborn child)[7] tends to be inconsistent with Claimant's testimony concerning

---

[7] The Court is not convinced that Claimant's stated intent to keep her unborn child undermines her testimony concerning the severity and effects of her impairments, especially since it appears Claimant would raise the child with the help of the child's father.  The fact that this particular reason does not ultimately support the ALJ's credibility determination does not alter the Court's ultimate finding concerning the ALJ's credibility determination, since the ALJ provided other reasons that support her credibility determination.

the severity and effects of her impairments, particularly Claimant's mental impairments. *See Dent v. Astrue*, 2009 WL 3418155, at *6 (M.D. Ga. Oct. 14, 2009) (ability to attend college classes properly considered as daily activity showing claimant not as limited as alleged). Therefore, the Court finds that the ALJ's third reason is supported by substantial evidence, and supports her credibility determination.

Fourth, the ALJ found that Claimant's testimony was not entirely credible, in part, due to Claimant's ongoing search for work. R. 41. An ALJ may consider a claimant's attempts to find work during the relevant period when assessing the credibility of claimant's testimony. *See Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 949 (11th Cir. 2006). Claimant argues that her search for work did not necessarily mean that she would be capable of working. Doc. 19 at 38. The Court, however, finds this argument unpersuasive. The ALJ reasonably considered and found that Claimant's search for work was inconsistent with her allegation that she was disabled. *See Turner*, 182 F. App'x at 949 (finding that claimant's search for work while she was allegedly disabled was inconsistent with complaints of disabling pain). Therefore, the Court finds that the ALJ's fourth reason is supported by substantial evidence, and supports her credibility determination.

Fifth, the ALJ found that Claimant's testimony was not entirely credible, in part, due to the inconsistent information provided by Claimant, including inconsistent information concerning her substance abuse. R. 42. Claimant does not challenge this particular reason. *See* Doc. 19 at 36-39. The ALJ reasonably considered whether Claimant's testimony was consistent with other evidence in the record. Claimant testified that she stopped using controlled substances sometime in late 2013 and early 2014. R. 59. This testimony, as the ALJ explained, is inconsistent with other evidence in the record, which reveals that Claimant tested positive for cocaine several times in 2014. R. 42 (citing R. 1447, 1546). This inconsistency is relevant given the evidence indicating

that Claimant's substance abuse could negatively impact the efficacy of her seizure medication, which, in turn, could result in an increase of otherwise preventable seizures. R. 1448. Therefore, the Court finds that the ALJ's fifth reason is supported by substantial evidence, and supports her credibility determination.

In light of the foregoing, the Court finds that the ALJ articulated good cause to find Claimant's testimony "not entirely credible," and that her reasons are supported by substantial evidence. *See Foote*, 67 F.3d at 156162 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

### E. VE Testimony.

Claimant argues that the ALJ failed to include all of the limitations caused by her mental impairments in the hypothetical to the VE. Doc. 19 at 30-31. Thus, Claimant argues that he ALJ erred by relying the VE's testimony in determining that Claimant could perform other work in the national economy. *Id*.

The Commissioner argues that the ALJ's hypothetical was consistent with her RFC determination, and that she was not required to include limitations in her hypothetical that she determined were not supported by the record. *Id*. at 33. Thus, the Commissioner argues that the ALJ did not err by relying on the VE's testimony in determining that Claimant could perform other work in the national economy. *Id*.

The ALJ may consider the testimony of a VE in determining whether the claimant can perform other jobs in the national economy. *Phillips*, 357 F.3d at 1240. The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram*, 496

F.3d at 1270, or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed a hypothetical to the VE that was consistent with her RFC determination. R. 78-79. Based on the ALJ's hypothetical, the VE found that Claimant would be able to perform the following representative jobs: office helper; marker; and document preparer. *Id*. The ALJ found the VE's testimony credible, and relied on the same in determining that Claimant could perform other work in the national economy. R. 44.

The ALJ included those limitations in her hypothetical that she found to be supported by the record. Claimant argues that the ALJ should have included additional mental limitations, including, but not limited to, poor impulse control, anger management issues, and impaired ability to accept criticism from supervisors and interact with coworkers. Doc. 19 at 31. The ALJ considered Claimant's mental impairments, and accounted for the same in the RFC determination by limiting Claimant to no contact with the public and performance of "simple routine tasks with no more than occasional collaborative efforts with coworkers and supervisors in a job with no goal setting judgments." R. 36-37. The ALJ was not required to include any of the limitations Claimant's identifies into the hypothetical, because the ALJ, as discussed above, essentially rejected those limitations and arrived at an RFC determination that is supported by substantial evidence. *See* R. 37-43; *Crawford*, 363 F.3d at 1161. Therefore, the Court finds that the ALJ did not error by omitting the limitations identified by Claimant on appeal, and, thus, properly relied

on the VE's testimony in determining that Claimant could perform other work in the national economy.

V. **CONCLUSION.**

Accordingly, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on January 18, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable K. Barlow
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Desoto Bldg., Suite 400
8880 Freedom Crossing Trail
Jacksonville, FL 32256-1224